Mario R. Stevens
NAME

J-36238
PRISON NUMBER

Kern Valley State Prison
P.O. Box 5103
CURRENT ADDRESS OR PLACE OF CONFINEMENT

Delano, California 93216
CITY, STATE, ZIP CODE

2254 ✓ 1983
FILING FEE PAID
Yes ___ No ✓
IFP MOTION FILED
Yes ✓ No ___
COPIES SENT TO
Court ✓ ProSe ___

FILED
DEC 20 2007
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY [signature] DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Mario R. Stevens,
(FULL NAME OF PETITIONER)

PETITIONER

v.

A. Hedgepeth. et al;,
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS])

RESPONDENT

and

Edmund G. Brown JR.,
The Attorney General of the State of California, Additional Respondent.

Civil No '07 CV 2398 W NLS
(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

## PETITION FOR WRIT OF HABEAS CORPUS

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack: San Bernardino, CA 92415-0240
2. Date of judgment of conviction: June 20 1997
3. Trial court case number of the judgment of conviction being challenged: FSB - 14176
4. Length of sentence: 22 years with 80%

5. Sentence start date and projected release date: August 5th 1997

6. Offense(s) for which you were convicted or pleaded guilty (all counts): (Health & Safety Code, 11351.5) (Penal code 12022, Subd (C)

7. What was your plea? (CHECK ONE)
   (a) Not guilty ☒
   (b) Guilty ☐
   (c) Nolo contendere ☐

8. If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)
   (a) Jury ☒
   (b) Judge only ☐

9. Did you testify at the trial?
   ☐ Yes ☒ No

## DIRECT APPEAL

10. Did you appeal from the judgment of conviction in the **California Court of Appeal**?
   ☒ Yes ☐ No

11. If you appealed in the **California Court of Appeal**, answer the following:
   (a) Result: Affirmed
   (b) Date of result (if known): 9-30-07
   (c) Case number and citation (if known): E021132
   (d) Names of Judges participating in case (if known) N/A
   (e) Grounds raised on direct appeal: Same as herein

12. If you sought further direct review of the decision on appeal by the **California Supreme Court** (e.g., a Petition for Review), please answer the following:
   (a) Result: Affirmed
   (b) Date of result (if known): 2-12-99
   (c) Case number and citation (if known): S074578
   (d) Grounds raised: Same as claimed herein

13. If you filed a petition for certiorari in the **United States Supreme Court**, please answer the following with respect to that petition:

(a) Result: N/A

(b) Date of result (if known): ______

(c) Case number and citation (if known): ______

(d) Grounds raised: ______

## COLLATERAL REVIEW IN STATE COURT

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Superior Court**?
☐ Yes ☐ No

15. If your answer to #14 was "Yes," give the following information:

(a) **California Superior Court** Case Number (if known): ______

(b) Nature of proceeding: Writ of Habeas Corpus

(c) Grounds raised: ______

(d) Did you receive an evidentiary hearing on your petition, application or motion?
☐ Yes ☒ No

(e) Result: Not excepted by the Court: See (exhibit-B)

(f) Date of result (if known): 6-21-2005

16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Court of Appeal**?
☒ Yes ☐ No

17. If your answer to #16 was "Yes," give the following information:

(a) **California Court of Appeal** Case Number (if known): N/A

(b) Nature of proceeding: ______

(c) Names of Judges participating in case (if known) ______

(d) Grounds raised: ______

(e) Did you receive an evidentiary hearing on your petition, application or motion?
☐ Yes ☒ No

(f) Result: ______

(g) Date of result (if known): ______

18. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?
☒ Yes ☐ No

19. If your answer to #18 was "Yes," give the following information:

(a) **California Supreme Court** Case Number (if known): N/A

(b) Nature of proceeding: Writ of Habeas Corpus

(c) Grounds raised: Same as herein

(d) Did you receive an evidentiary hearing on your petition, application or motion?

☐ Yes ☒ No

(e) Result: ______

(f) Date of result (if known): ______

20. If you did ***not*** file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the **California Supreme Court**, containing the grounds raised in this federal Petition, explain briefly why you did not:

N/A

## COLLATERAL REVIEW IN FEDERAL COURT

21. Is this your **first** federal petition for writ of habeas corpus challenging this conviction?

☒ Yes ☐ No (IF "YES" SKIP TO #22)

(a) If no, in what federal court was the prior action filed? ______

(i) What was the prior case number? ______

(ii) Was the prior action (CHECK ONE):

☐ Denied on the merits?

☐ Dismissed for procedural reasons?

(iii) Date of decision: ______

(b) Were any of the issues in this current petition also raised in the prior federal petition?

☐ Yes ☒ No

(c) If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?

☐ Yes ☐ No

**CAUTION:**

- **Exhaustion of State Court Remedies:** In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present ***all*** other grounds to the California Supreme Court before raising them in your federal Petition.
- **Single Petition:** If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.
- **Factual Specificity:** You must state facts, not conclusions, in support of your grounds. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do. A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

## GROUNDS FOR RELIEF

22. **State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground.** (e.g. what happened during the state proceedings that you contend resulted in a violation of the constitution, law or treaties of the United States.) If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

(a) GROUND ONE: Same as herein

Supporting FACTS: Please see the attached Petition for Writ of Habeas Corpus, in THE CALIFORNIA SUPREME COURT. All issues are the same; furthermore they have been exhausted in CALIFORNIA SUPREME COURT. Petitioner is seeking relief in THE UNITED STATES DISTRICT COURT.

PLEASE SEE THE FOLLOWING PAGE

**Did you raise GROUND ONE in the California Supreme Court?**

☒ Yes ☐ No.

If yes, answer the following:

(1) Nature of proceeding (i.e., petition for review, habeas petition): Habeas Petition

(2) Case number or citation: S149241

(3) Result (attach a copy of the court's opinion or order if available): ______

Mario R. Stevens
**CDC# J36238**
P.O. BOX 5103
Delano, CA 93216

**In Pro Per**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>Mario R. Stevens,<br>Petitioner,<br><br>On habeas Corpus. | No. S149241 |

"PETITIONER'S WRIT OF HABEAS CORPUS"

I.

Come now, Mario R. Stevens, the petitioner in the above entitled action, Pursuant to ART. I sec. 15., of the California Constitution; and the confrontation Clause of the Sixth Amendment to the United States Constitution, after petitioner has recieved a June 20, 2007 "postcard denial" to his petition for writ of Habeas Corpus, from the California Supreme Court. (See: EXHIBIT-D.)

The petitioner now seeks Habeas relief from the UNITED STATES DISTRICT COURT, because the California Supreme Court erred when it failed to consider petitioner's factual allegations based upon the stipulated record of case, and the new rule of Law announced in

CRAWFORD V. WASHINGTON,124 S.Ct. 1354 (2004), which was not available to petitioner on his direct appeal.(See: EXHIBIT-A.), and even though the new Crawford rule was not available on his direct appeal, California Law provides petitioner with an exception to the second appeal rule, which permits petitioner to raise in petition for writ of habeas corpus, this issue of a 'Constitutional Magnitude' which has previously been rejected on direct appeal, when there has been a change in the law affecting petitioner.(See: IN RE HARRIS,(1993) 5 CAL.4TH 813, 841, 21 Cal.Rptr 2d 373.)

The CRAWFORD, decision holds that the Confrontation Clause required petitioner to have the opportunity to cross-examine Sherryce Henderson, at his preliminary hearing and at trial, before the trial court allowed the police to testify to what police said Henderson told them, which amounted to "Testimonial Hearsay" and was both a "Watershed Rule" and one without which the likelihood of an accurate conviction was seriously diminished and therefore applies retroactively in petitioner's habeas corpus proceeding.(see: BOCKTING V. BAYER, 399 F.3d 1010(9TH.CIR. 2005);also see, SCHRIRO V. SUMMERLIN, 124 S.Ct. 2519, 2523 (2004).)

Petitioner can also obtain habeas corpus relief from the California Supreme Court, when he has shown that the Crawford error was prejudicial and had a substantial and injurious effect on the out come of his trial. The postcard denial given by the Court of appeal has failed to consider the State and Federal law which allows petitioner's writ of habeas corpus to be granted. Petitioner's only remaining State remedy now rest with the California Supreme Court for an independent review of the record, and new law when considering petitioner's writ of habeas corpus.(See: IN RE SERRANO,(1995) 41 Cal.Rptr.2d 695,699.)

GROUND ONE:

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT PERMITTED A POLICE OFFICER TO TESTIFY THAT PETITIONER'S GIRL FRIEND SAID THAT COCAINE AND A GUN FOUND IN HER APARTMENT BELONGED TO PETITIONER, RESULTING IN A VIOLATION OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL, AND PETITIONER'S RIGHT TO CONFRONT AND CROSS-EXAMINE WITNESSES AGAINST HIM"

STATEMENT OF FACTS:

Petitioner hereby does reallege and incorporate by reference as though fully set forth herein the supporting facts as duly stated and stipulated to, in petitioner's direct appeal.(See: EXHIBIT-A).

ARGUMENT AND POINTS AND AUTHORITIES IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS:

I.

Petitioner presents one claim, which was previously raised on direct appeal. A state court may not allow a prisoner to re-litigate the same issue via habeas corpus petition, unless, there are new facts, law, or evidence that were not previously available in the record of appeal.(See: IN RE SALDANA,(1997) 67 Cal.Rptr.2d 183; IN RE GAY,(1998) 80 Cal.Rptr.2d 765; IN RE HARRIS,(1993) 21 Cal.Rptr.2d 373).

California Constitutional law holds that a violation of fundamental rights can be challenged on habeas corpus even when the claim was previously rejected on appeal, if petitioner can show that the defects so affected the trial and conviction, "as to violate the fundamental aspects of fairness and result in a miscarriage of justice. (See: CALIFORNIA CONSTITUTION, ART IV, § 13.; IN RE HARRIS, SUPRA.).

This petition is not barred by the "Second Appeal" rule, which generally holds that a party may not raise in a habeas corpus petition, an issue which was raised and rejected on direct appeal, (See:IN RE WALTREUS,(1965) 42 Cal.Rptr. 9), this "Exception" to the Waltreus Rule, established by historic state case law, permits petitioner to raise in a habeas petition a claim previously rejected on direct appeal when there has been a change in the law affecting the petitioner.(See:IN RE HARRIS,(1993) 21 Cal.Rptr.2d 373).

This petition for writ of habeas corpus is now petitioner's only remedy to gain vindication for the violation of his "Constitutionl" claim that he was denied his right to a fair trial, when the trial court allowed a police officer to give hearsay testimony at trial. Thus, denying petitioner his "Constitutional Right" to confront and cross-examine witnesses against him. (See: U.S.C.A. CONST.AMEND.6TH.)

THE NEW RULE ANNOUNCED IN CRAWFORD V. WASHINGTON:

II.

Petitioner's direct appeal in the above entitled case, containing the same above entitled claim was denied in the California Court of Appeals on September 30, 1998.(See:EXHIBIT-A).

On March 8, 2004 the United States Supreme Court granted certiorari in WASHINGTON STATE V. CRAWFORD,(2003) 54 P.3d 656 (Cert.Granted Sub.Nom. CRAWFORD V. WASHINGTON, 124 S.Ct. 1354 (2004). The CRAWFORD, decision became known to petitioner in April of 2005.

On May 17, 2005 petitioner acting in pro se attempted to resolve this claim by filing a motion to the California Court of Appeal,

"To vacate the

"MOTION TO VACATE SUBMISSION, TO GRANT LEAVE TO FILE SUPPLEMENTAL OPENING BRIEF RAISING THE 'CRAWFORD' ISSUE." Pursuant to Cal.Rules of Court, rule 23(e).(See:EXHIBIT-B).

Although the Constitutional issue on which certiorari was granted also directly affects petitioner's case, it was not available at the time of his direct appeal. Subsequently, petitioner's direct appeal was denied as to this issue, because the California Supreme Court had repeatedly rejected such claims, in holding with the then controlling president, Ohio V. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1985). In light of the United States Supreme Court's grant of cretiorari in CRAWFORD, it is now clear that this is an arguable issue in the present petition for writ of habeas corpus. Petitioner should not be deprived of the benefit of this favorable ruling on this issue of a "Constitutional Magnitude", because had Crawford been available to petitioner on his direct appeal, his conviction would have been over turned and the prosecution's entire case would have fell apart, because the prosecution would have been precluded from introducing the hearsay at a second trial, because now it is clear that the trial court's admission of Sheryce Henderson's ex parte statement violated the Confortation Clause, and petitioner's right to a fair trial, because where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy the Constitutional demands is confrontation, and cross-examination of the witness against the defendant. (See: U.S.C.A. CONST.AMEND.6TH).

In CRAWFORD V. WASHINGTON, 124 S.Ct. 1354 (2004), the United States Supreme Court ruled that "out-of-court statements by

witnesses that are testimonial, are barred under the Confrontation Clause, unless witnesses are unavailable and defendants had prior opportunity to cross-examine witnesses, regardless of whether such statements are deemed reliable by the court, (abrogating Ohio V. Roberts, Supra.)

Petitioner's case is a self contained demonstration of Roberts, unpredictable and inconsistent application. It also reveals Roberts, failure to interpret the Constitution in a way that secures it's intended constraint on judicial discretion.

The Constitution prescribes the procedure for determining the reliability of testimony in criminal trial, and the Roberts Court, no less than any State Court, has the authority to replace it with one of it's own devising.

In light of the clear similarities between petitioner's case, and the failure to satisfy the Constitutional demands of the Confrontation Clause in CRAWFORD V. WASHINGTON, SUPRA. and that the error criticized by petitioner has the very same concerns and Constitutional deprivations identified in CRAWFORD, because the entire case put forth by the prosecution against the petitioner relied exclusively on the offending hearsay testimony.

Thus, in the present case, when the trial court is allowed to determine the application of the Confrontation Clause, using the language of Cal.Evid.Code §§ 1202; 1220, with exceptions to the Sixth Amendments ultimate goal, to ensure reliability of evidence by the Confrontation Clause 'Procedural Guarantee', in that it commands, not that evidence be reliable, but that reliability be assessed in a particular manner, to afford the accused a fair trial. When petitioner's trial court failed to allow petitioner

the opportunity to test the crucible of cross-examination, neither at his preliminary hearing nor at his trial. The trial court violated petitioner's Constitutional Right to a fair trial as well as his guarantee of Confortation under the Sixth Amendment to the United States Constitution. This error is reversible per se. (See: CRAWFORD V. WASHINGTON, 124 S.Ct. 1354, 1370-1371,(2004).)

ARGUMENT

III.

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT PERMITTED A POLICE OFFICER TO TESTIFY THAT PETITIONER'S GIRL FRIEND SAID THAT COCAINE AND A GUN FOUND IN HER APARTMENT BELONGED TO PETITIONER, RESULTING IN A VIOLATION OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL, AND PETITIONER'S RIGHT TO CONFRONT AND CROSS-EXAMINE WITNESSES AGAINST HIM"

(A) THE COURT'S ERROR DENIED PETITIONER THE RIGHT TO CONFRONT WITNESSES AGAINST HIM AT HIS PRELIMINARY HEARING:

At preliminary examination Officer Gary Schuelke testified for the prosecution. On Direct, Officer Schuelke stated that a San Bernardino Sheriff's Deputy, named Granado, told him that petitioner was on parole out of Los Angeles County.(P.E. p.10). Schuelke went on to testify that he aquired Sherryce Henderson's address from Deputy Granado, and that Granado told Schuelke that the petitioner gave him Sherryce Henderson's address as his home address. (P.E. p.11).

It is well known by presiding trial judges as well as practitioner's of criminal law, that cross-examination at a preliminary hearing is much different than cross-examination at a trial. Only fictional attorneys defeat a prosecution at the preliminary hearing stage. Real defense attorneys know cross-examination which might lead to an acquittal at trial where the standard is guilt beyond a reasonable

doubt will rarely lead to the dismissal of an information at the preliminary hearing, where the standard is merely probable cause to believe the defendant committed a crime. Yet, all will agree that cross-examination at preliminary hearing is a warranted discovery tool. (See:PEOPLE V. LANE,(1986) 232 Cal.Rptr.110).

It is also clear by the transcript of the prosecutor's direct examination of Officer Schuelke, that his questions were essentially to produce testimonial evidence. Testimony by this police officer in turn was made to prove the statements he gave as facts. However, the Confrontation Clause reflects the same acute concern for a police officer's out-of-court statements introduced at preliminary hearing, as the Sixth Amendment provides an accused to the introduction of such statements at trial.

The Sixth Amendment's Confrontation Clause: Provides a criminal defendant the right to directly encounter hostile witnesses. (See:POINTER V. TEXAS,380 U.S. 400, 403(1965), The Right to cross-examine adverse witnesses and the right to be present at any stage of the proceedings that would enable the defendant to effectively cross-examine adverse witnesses,(See:GERSTEIN V. PUGH,420 U.S. 103, 119-120 (1975); COY V. IOWA,487 U.S. 1012,1019 (1988), by "Guaranteeing" these rights, the Confrontation Clause serves to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigious testing in a adversarial proceeding. The right to face to face confrontation is the core value protected by the clause and pursuant to the holdings of CRAWFORD, it is a guaranteed right that petitioner was entitled to even at his preliminary hearing. (See:PEOPLE V. SEIJAS, 9 Cal.Rptr.3d 826,(2004)

(B) THE COURT'S ERROR DENIED PETITIONER THE RIGHT TO CONFRONT WITNESSES AGAINST HIM AT HIS TRIAL:

The production of testimonial evidence by police officer Gary Schuelke for the prosecution continued at petitioner's jury trial. Schuelke testified that after he broke down Sherryce Henderson's residence door, he searched the apartment inhabited by Henderson and her two childern.(R.T. p.45-46,51.), At trial Schuelke changed his preliminary hearing statement that Deputy Granado gave him Sherryce Henderson's address, and instead told the jury that petitioner himself, told him at the time of arrest that he resided at the Henderson residence. (R.T. p.35), Schuelke testified that he discovered two pieces of luggage during the search of Henderson's apartment, which contained a loaded 357 revolver, a ounce and a half of rock cocaine, some mens clothing, and a letter addressed to petitioner at his home address on 21st street, exactly where Schuelke had searched just prior to his arrival at the Henderson apartment. (R.T. p.47-48.)
Schuelke's self serving testimony continued, that he allowed Henderson to observe him remove the gun and drugs from the luggage. (R.T. p.45-46, 51.), and that Henderson exclaimed "oh my god. I didn't know that stuff was in here."(R.T. p.52.), Schuelke went on to testify as to what Henderson said and how she felt, by stating she was very upset, and "almost" started crying. (R.T. p.52.) Schuelke said, she said, "these things" belonged to the petitioner.(R.T. p.52.) Petitioner's counsel objected to Schuelke's hearsay testimony that he said, she said the gun and cocaine belonged to petitioner.(R.T. p.52-53.) Petitioner's counsel said that Henderson's first statement--"oh my god" I

didn't know that stuff was in here"-- appeared to be a spontaneous statement.(R.T. p.54.), and instead petitioner's counsel objected to the second statement, attributing ownership of the gun and drugs to petitioner, was not a spontaneous declaration, and was excludible as inadmissible hearsay.(R.T. p.54.)

The trial court held a hearing out side the presence of the jury, pursuant to Evidence Code Section 402, to clarify the circumstances under which Henderson made her 'extrajudicial statements.'(R.T. p.54-55.) Schuelke also testified at that hearing, that he felt both of Henderson's statements-- that she was surprised to see the items in her apartment, and that the items belonged to petitioner-- were actually all one statement."(R.T. p. 55-56.) Schuelke explained that Henderson made those statements repeatedly while he was removing the gun and drugs in front of her from the garment bag and the duffle bag.(R.T. p. 56-57.) The trial court noted that Schuelke was careful to explain that Henderson's statements were not the result of his acting in a investigatory capacity to produce evidence against petitioner, and so ruled that all of her statements were spontaneous declarations.(R.T. p.57.) In the presence of the jury, the court overruled the petitioner's objection to Police Officer Gary Schuelke's testimony. (R.T. p.57.) After that the record shows the trial court allowed Schuelke to further testify as to that Henderson repeatedly stated "oh my God. I can't believe Mario,(Petitioner), has a loaded gun in here right next to my kids." "I can't believe he has dope in here." (R.T. p.59.)

On cross-examination, Schuelke explained that he and the other officer

had to make a forced entry when they arrived at Henderson's apartment at 5:20 a.m., because she did not answer the door.(R.T. 64.) once inside, Schuelke told Henderson that he believed petitioner had concealed narcotics in her apartment, and that petitioner had been arrested by him, and that he had a warrant to search her apartment.(R.T. p.62.) Schuelke stated that he asked Henderson if she had any of petitioner's belonging's in the apartment, and Schuelke testified that Henderson replied by showing him two pieces of luggage in her bedroom, which she said belonged to petitioner.(R.T. p.62-63.) Schuelke testified that he questioned Henderson, if the contents of the luggage was hers, and that she answered, that she did not know anything about any drugs being in her apartment.(R.T. p.63.)

PREJUDICIAL EFFECT TO PETITIONER AND THE APPLICATION OF CRAWFORD TO HENDERSON'S EXRTAJUDICIAL STATEMENT'S:

IV.

Before the trial court found that Henderson was unavailable as a witness, due to her unwillingness to testify; she did not testify at trial, or preliminary examination. There is never at any stage of the proceeding a contention that petitioner ever had any opportunity to cross-examine Henderson regarding her statements which Police Officer Schuelke was allowed to testify to on her behalf as to what Henderson said.

Thus, application of Crawford depends on whether Henderson's statements to Police are "testimonial", as previously noted on the trial record, Henderson's first statement which Schuelke testified to was: "oh my God" I didn't know that stuff was in here." and second statement: "oh my God." "I cant believe Mario

has a loaded gun right next to my kids." "I cant believe he has dope in here." all of these statements were obtained after petitioner was arrested, after police obtained a warrant to search Henderson's apartment, and during the police search of Henderson's apartment, In strict accordance with Crawford, all of the statements which Officer Schuelke was allowed to testify that Henderson told him, were in fact "testimonial".

As the Crawford Court stated: "[W]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed."(CRAWFORD, SUPRA, 124 S.Ct. at p.1374.)

The Crawford Court did not define the term "interrogation" but the Court did suggest that the term should be construed broadly, emphasizing that it used the term in "colloquial, rather than any technical legal sense."(Id. at 124 S.Ct. at p. 1365 fn.4.), there the wife's "recorded statement konwingly given in response to a structured police questioning, qualified under any conceivable definition." (Ibid.)

In the instant case Henderson's statements are obtained by Officer Schuelke, while he questioned her during a warrant search of her apartment. The petitioner never at any time during the proceedings had the opportunity to cross-examine Henderson as to the extra judicial statements provided by police.

Because the United States Supreme Court in Crawford holds that statements produced during police interrogations implicate core Confrontation Clause concerns, serving a search warrant and

23. Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
☐ Yes ☒ No

24. If your answer to #23 is "Yes," give the following information:
(a) Name of Court: ______
(b) Case Number: ______
(c) Date action filed: ______
(d) Nature of proceeding: ______
(e) Name(s) of judges (if known): ______
(f) Grounds raised: ______
(g) Did you receive an evidentiary hearing on your petition, application or motion?
☐ Yes ☒ No

25. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a) At preliminary hearing: Not known
(b) At arraignment and plea: Not known
(c) At trial: Cecilia Torrės
(d) At sentencing: Cecilia Torres
(e) On appeal: Victor Morris
(f) In any post-conviction proceeding: ______
(g) On appeal from any adverse ruling in a post-conviction proceeding: ______

26. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
☐ Yes ☒ No

27. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
☐ Yes ☒ No

(a) If so, give name and location of court that imposed sentence to be served in the future:
______________________________

(b) Give date and length of the future sentence: ______________________________
______________________________

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
☐ Yes ☐ No

28. Consent to Magistrate Judge Jurisdiction

In order to insure the just, speedy and inexpensive determination of Section 2254 habeas cases filed in this district, the parties may waive their right to procced before a district judge and consent to magistrate judge jurisdiction. Upon consent of all the parties under 28 U.S.C. § 636(c) to such jurisdiction, the magistrate judge will conduct all proceedings including the entry of final judgment. The parties are free to withhold consent without adverse substantive consequences.

The Court encourages parties to consent to a magistrate judge as it will likely result in an earlier resolution of this matter. If you request that a district judge be designated to decide dispositive matters, a magistrate judge will nevertheless hear and decide all non-dispositive matters and will hear and issue a recommendation to the district judge as to all dispositive matters.

You may consent to have a magistrate judge conduct any and all further proceedings in this case, including the entry of final judgment, by indicating your consent below.

Choose only one of the following:

☒ Plaintiff consents to magistrate judge jurisdiction as set forth above.

**OR**

☐ Plaintiff requests that a district judge be designated to decide dispositive matters and trial in this case.

29. Date you are mailing (or handing to a correctional officer) this Petition to this court: 12-13-07

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

12-13-07 Mario Stevens

(DATE) SIGNATURE OF PETITIONER

(PETITIONER'S 08/26/1997 DIRECT APPEAL.)

EXHIBIT (A).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT, DIVISION TWO

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br>Plaintiff and Respondent,<br>v.<br>MARIO R. STEVENS,<br>Defendant and Appellant. | No. E021132<br>(San Bernardino County Superior Court No. FSB 14176) |

**APPELLANT'S OPENING BRIEF**

- - -

**STATEMENT OF APPEALABILITY**

The instant appeal is taken from a judgment, entered following a trial, that finally disposes of all issues between the parties. As such, the judgment is appealable pursuant to Penal Code section 1237.

- - -

**STATEMENT OF THE CASE**

An information was filed on April 25, 1997 in San Bernardino County Superior Court case no. FSB 14176. (CT 53.)[1/] It charged appellant in count one with possession of cocaine base for sale (Health & Saf. Code, § 11351.5), and alleged that he was personally armed with a firearm in the commission of the offense (Pen. Code, § 12022, subd. (c)). It also alleged that appellant had one prior serious felony

1. CT and RT refer respectively to the Clerk's Transcript and the Reporter's Transcript on appeal.

conviction (Pen. Code, §§ 667, subds. (b) through (i), 1170.12, subds. (a) through (d)), that he had served one prior prison term (Pen. Code, § 667.5, subd. (b)), and that he had two prior convictions of possession for sale of controlled substances (Health & Saf. Code, § 11370.2, subd. (a)). (CT 54-55.) Appellant pleaded not guilty and denied the allegations. (CT 57.)

Jury trial began on June 18, 1997. The jury returned its verdicts on June 20, 1997, finding appellant guilty as charged and finding the personal firearm use enhancement allegation true. (CT 104, 151-152.) A court trial on the issue of appellant's prior convictions and prior prison term was held on July 2, 1997. The court found the allegations true. (CT 154.)

On August 5, 1997, the trial court imposed sentence on appellant. The court imposed the upper term of five years for his conviction in count one, and doubled it to ten years pursuant to the Three Strikes law. The court also imposed, consecutive thereto, the upper term of five years for the personal firearm use enhancement, two enhancement terms of three years each for appellant's prior convictions of possession for sale, and a one year enhancement term for his prior prison term. Appellant thereby received a total determinate term of 22 years imprisonment. (CT 156, 159.)

Appellant filed a timely notice of appeal on August 26, 1997. (CT 160.)

## STATEMENT OF FACTS

Gary Schuelke, a police officer, was assigned to patrol the downtown business area of San Bernardino to prevent transients, prostitutes, and narcotics dealers and users from hanging around in front of businesses and creating problems for customers who frequent those businesses. (RT 41-43.) Schuelke made other patrol officers aware that he wanted to contact appellant. (RT 43.)

On April 2, 1997, at about 7:45 p.m., police officer Marco Granado was driving his patrol car in the area of Fifth and G Streets in San Bernardino when he saw appellant standing in front of a store. (RT 31.) Thirty minutes later, Granado again drove past the store and saw appellant standing in the same place. (RT 32.) Two black men were standing with appellant, but when they observed Granado, the two men walked away from appellant. (RT 33-34.) Granado stopped and questioned appellant. (RT 34.) Appellant gave his name and two addresses in San Bernardino -- his "home address" on 21st Street and his girlfriend's address on Garden Drive. (RT 34-35, 45-46.)

Two days later, on April 4, Granado was on duty again. (RT 34.) He stopped a car driven by appellant. (RT 34.) Granado arrested appellant, searched him, and found $1060 in cash. (RT 35-36, 44.) Schuelke then took charge of the investigation. (RT 36, 43, 45.)

Schuelke went to the 21st Street address appellant

had provided. (RT 45.) At that address, Schuelke arrested a man named Amos and a woman named Hindmon for possession of narcotics for sale and possession of a gun, and he searched the premises. (RT 45, 61, 67.) Amos and Hindmon ultimately pleaded guilty. (RT 67.)

Several hours after Schuelke searched the 21st Street address, he went to the Garden Drive address provided by appellant. (RT 45.) Schuelke was accompanied by Detective Desrochers. (RT 51, 114.) They arrived at 5:20 a.m. (RT 64.) No one answered the door at the apartment, so the officers made a forced entry. (RT 64.) The apartment was inhabited by a woman named Sherryce Henderson and two small children. (RT 45-46, 51, 63.) Schuelke told Henderson that he had arrested appellant, that he believed appellant was concealing narcotics in her apartment, and that he had a search warrant. (RT 62.) Schuelke asked Henderson if appellant had any belongings in the apartment. (RT 62.) Henderson showed Schuelke two pieces of luggage that she said belonged to appellant -- a large garment bag and a small duffle bag. (RT 45-47, 62.) The bags were in the bedroom where Henderson slept. (RT 63.) Both bags contained men's clothing. (RT 46-47.)

Inside the garment bag, Schuelke found a piece of mail addressed to appellant at the 21st Street address. (RT 47.) The letter was from the Social Security Administration and concerned an application for a social

security card. (RT 60.) Also inside the garment bag, Schuelke found what he estimated to be an ounce and a half of rock cocaine divided in six separate packages. (RT 48.) An ounce and a half is approximately 40 grams. (RT 50.)

Inside the duffle bag, Schuelke found a loaded .357 revolver. (RT 50.) Henderson was present when Schuelke removed the gun from the duffle bag. (RT 51.) Henderson said, "Oh my God. I didn't know that stuff was in here," and, "Oh, my God. I can't believe Mario has a loaded gun in here right next to my kids. I can't believe he's got dope in here." (RT 52, 59.) She made this statement repeatedly. (RT 59.) She was very upset and crying. (RT 52, 59.) Henderson told Schuelke the things belonged to appellant. (RT 52.)

Schuelke searched other parts of the Garden Drive apartment but found nothing in Henderson's belongings to indicate any narcotics activity. (RT 64.)

A criminalist named Kerry Heward examined the rock cocaine. (RT 96, 110.) Its total weight, including the plastic wrappers in which it was packaged, was 36.49 grams. (RT 96-97.) Heward tested it and determined it was indeed cocaine base. (RT 98, 102.)

Based on his training and experience in law enforcement, Schuelke opined that appellant possessed the rock cocaine for the purpose of sale, because of the way it was individually packaged, and because of the large amount of

money that appellant had in his possession at the time he was arrested. (RT 48.) Rock cocaine is usually smoked, and typically sold to a user at a price of $20 for a quarter gram. (RT 49.) Schuelke estimated the value of 40 grams of rock cocaine at $3200. (RT 50.)

It was stipulated that appellant's mother, Yvonne Stevens, would have testified that appellant lived with her in Pasadena. (RT 120.)

//

//

## ARGUMENT

I

### THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT PERMITTED A POLICE OFFICER TO TESTIFY THAT APPELLANT'S GIRLFRIEND SAID THAT THE COCAINE AND GUN FOUND IN HER APARTMENT BELONGED TO APPELLANT

The chief prosecution witness at appellant's trial was police officer Gary Schuelke. He testified that he searched an apartment inhabited by Sherryce Henderson and her two children. (RT 45-46, 51.) Appellant, who had been arrested, had told the police he had two addresses -- his "home address" on 21st Street, and Henderson's address, which he called "his girlfriend's address." (RT 35.)

Schuelke testified that in Henderson's apartment he found two pieces of luggage, which contained the following items: approximately an ounce and a half of rock cocaine in six separate packages, a loaded .357 revolver, some men's clothing, and a letter addressed to appellant at the 21st Street address. (RT 47-48, 50.)

Schuelke testified that Henderson observed him remove the gun and cocaine from the luggage. (RT 45-46, 51.) Henderson said, "Oh my God. I didn't know that stuff was in here." (RT 52.) She was very upset and "almost" started crying. (RT 52.) She told Schuelke that "these things" belonged to appellant. (RT 52.)

Appellant objected to Schuelke's testimony that Henderson said the cocaine and gun belonged to appellant.

(RT 52-53.) Appellant said Henderson's first statement -- "Oh my God. I didn't know that stuff was in here" -- appeared to be a spontaneous statement. (RT 54.) However, appellant objected that Henderson's second statement, attributing ownership of the cocaine and gun to appellant, was not a spontaneous declaration, and was excludible as inadmissible hearsay. (RT 54.)

The trial court held a hearing outside the presence of the jury, pursuant to Evidence Code section 402, to clarify the circumstances under which Henderson made her extrajudicial statements. (RT 54-55.) Schuelke testified at the hearing that Henderson's two statements -- that she was surprised to see the items in her apartment, and that the items belonged to appellant -- were actually "all one statement." (RT 55-56.) Schuelke explained that Henderson made those statements repeatedly while he was removing the cocaine from the garment bag and the gun from the duffle bag. (RT 56-57.) The trial court noted that Henderson's statements were not the result of any questioning by Schuelke, and concluded that all of her statements were spontaneous declarations. (RT 57.)

In the presence of the jury, the court overruled appellant's objection to Schuelke's testimony. (RT 58.) Schuelke then further testified that Henderson repeatedly said, "Oh, my God. I can't believe Mario [appellant] has a loaded gun in here right next to my kids. I can't believe he's got dope in here." (RT 59.)

On cross-examination, Schuelke explained that he and the other officer had to make a forced entry when they arrived at Henderson's apartment at 5:20 a.m., because she did not answer the door. (RT 64.) Once inside, Schuelke told Henderson that he had arrested appellant, that he believed appellant had concealed narcotics in her apartment, and that he had a search warrant for her apartment. (RT 62.) He asked her if appellant had any belongings in the apartment, and she responded by showing him the two pieces of luggage in her bedroom, which she said belonged to appellant. (RT 62-63.) Schuelke asked Henderson if the stuff in the luggage was hers, but she said she did not know anything about any drugs being in the apartment. (RT 63.)

The trial court erred when it overruled appellant's objection to Schuelke's testimony that Henderson said the cocaine and gun belonged to appellant (RT 52), and when it subsequently permitted Schuelke to testify that Henderson specifically said, "I can't believe Mario has a loaded gun in here right next to my kids. I can't believe he's got dope in here" (RT 59). The statements were hearsay and were not admissible as spontaneous declarations. The court's ruling constituted prejudicial error under state law prohibiting the admission of hearsay evidence (Evid. Code, § 1200, subd. (b)), and violated appellant's constitutional right to confront a witness against him (U.S. Const., Amends. VI, XIV; Cal. Const., art. I, § 15.) Reversal is required.

A statement is hearsay if it is made out of court and is "offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) Hearsay is inadmissible unless it is admissible pursuant to an exception provided by law. (Evid. Code, § 1200, subd. (b).) One such exception provides for the admission of spontaneous declarations:

> "Evidence of a statement is not made inadmissible by the hearsay rule if the statement:
>
> (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and
>
> (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception." (Evid. Code, § 140.)

"'The decision whether to admit a statement as a spontaneous utterance lies within the discretion of the trial court.'" (People v. Hines (1997) 15 Cal.4th 997, 1034, fn. 4, citations omitted.)

The California Supreme Court has explained the rules governing the admission of hearsay statements as spontaneous declarations:

> "'To render [statements] admissible [under the spontaneous declaration exception] it is required that (1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstances of the occurrence preceding it.'" (People v. Poggi (1988) 45 Cal.3d 306, 318, citation omitted, bracketed language in original.)

The Unites States Supreme Court has held that the

rule allowing admission of spontaneous declarations is one of several "firmly rooted" hearsay exceptions that do not violate an accused's constitutional right to confrontation under the Sixth Amendment, because hearsay that qualifies as a spontaneous utterance "is so trustworthy that adversarial testing can be expected to add little to its reliability." (White v. Illinois (1992) 502 U.S. 346, 356-357 [16 L.Ed.2d 848].) The Court has explained that the "basis for the 'excited utterance' exception . . . is that such statements are given under circumstances that eliminate the possibility of fabrication, coaching, or confabulation." (Idaho v. Wright (1990) 497 U.S. 805, 820 [111 L.Ed.2d 638].) "[T]he declarant's truthfulness is so clear from surrounding circumstances that the test of cross-examination would be of marginal utility." (Ibid.)

California courts are in accord with the United States Supreme Court's emphasis on trustworthiness, truthfulness, reliability, and the absence of any possibility of fabrication. "A spontaneous declaration is admissible, despite its character as hearsay, because of its particular reliability as the immediate product of direct perception, before fading memory or the opportunity for fabrication has intervened." (People v. Arias (1996) 13 Cal.4th 92, 150.) However, a hearsay statement should not be admitted as a spontaneous declaration when it could be inferred that the declarant made the statement to protect himself or herself

from a criminal charge. (E.g., People v. Keelin (1955) 136 Cal.App.2d 860, 870-871.)

Sherryce Henderson's statement that the cocaine and gun belonged to appellant (RT 52), as well as her statements, "I can't believe Mario [appellant] has a loaded gun in here right next to my kids. I can't believe he's got dope in here" (RT 59), did not qualify as spontaneous declarations, because the surrounding circumstances did not eliminate the strong possibility of fabrication.[2/]

The trial court's determination that Henderson's extrajudicial statements were spontaneous declarations required it to find that Schuelke's removal of the cocaine and the gun from the luggage in her apartment was an "occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting," and that "the utterance [was made] before there [had] been time to contrive and misrepresent." (See People v. Poggi, supra, 45 Cal.3d 306, 318.) But in order to find that Henderson was truly startled by seeing the gun and cocaine, the court had to presume she was an innocent party who actually had no knowledge that those items were being kept in her apartment. That presumption was unwarranted.

---

2. Appellant acknowledges that two of Henderson's statements were preceded by her exclamation, "Oh, my God." (RT 52, 54, 59.) Although a commentator on the rules of evidence has suggested, "If it begins with the words 'My God!' then it is an excited utterance" (Irving Younger, Hearsay: A Practical Guide Through the Thicket 144 (1988)), appellant respectfully submits that the commentator was being facetious.

The trial court's ruling completely ignored the reasonable possibility that Henderson knew the cocaine and the gun were in the luggage and that she feigned surprise and falsely blamed appellant, for the purpose of protecting herself from a charge that she was a co-owner or the sole owner of those items. Henderson would have had a strong motivation to deceive Schuelke into believing she was shocked and upset to see those items in her apartment and to claim falsely that the luggage containing those items was exclusively appellant's property. Thus her excitement and the spontaneity of her declaration may well have been contrived.

Appellant's case is distinguishable from cases where the spontaneity of the hearsay declarant's statement is beyond doubt. For example, in People v. Farmer (1989) 47 Cal.3d 888, the victim of a shooting described his attacker and related details of the incident shortly after the assault. (Id. at p. 904.) The Supreme Court reasoned that "the intense pain of his gunshot wounds and the concern he rightfully had about his survival no doubt preoccupied him so that he could not have contemplated spinning a false tale." (Ibid.) The Court determined, "It is improbable that he had either the capacity or the motivation to relate anything but the truth." (Id. at p. 906.) Thus the Court in Farmer concluded that the victim's hearsay statements were properly admitted as spontaneous declarations and they did not violate the confrontation clause. (Id. at pp. 904-906; see also People v. Poggi, supra,

45 Cal.3d 306, 319 [hearsay statements by assault victim were admissible as spontaneous].) In appellant's case, unlike Farmer, it is not "improbable" to suspect that the hearsay declarant had a motivation to lie.

Appellant's case is more like People v. Keelin, supra, 136 Cal.App.2d 860, where the victim of a shooting made extrajudicial statements in which he identified the defendant as the shooter and asserted that the defendant shot him after falsely accusing him of robbing the defendant of some money. (Id. at p. 870.) The California Court of Appeal observed, "It certainly could be inferred from the defensive matter included in [the victim's] extrajudicial statements that he was protecting himself from a charge that might be made that he had burglariously entered the trailer house of appellant with intent to rob him." (Id. at pp. 870-871.) The court of appeal concluded, based on this and other factors, that "the extrajudicial statements of [the victim] should not have been received." (Id. at p. 871.) In appellant's case, much like Keelin, it could be inferred from the defensive matter included in Henderson's extrajudicial statements that she was protecting herself from a charge that she was an owner or co-owner of the contraband.

Due to the reasonable possibility that Henderson was not at all startled by seeing the cocaine and the gun, and that she had sufficient time and a strong motivation to reflect and fabricate, Henderson's statements that she was

surprised to see the items in her apartment (RT 52), and that the items belonged to appellant (RT 52, 59) were not admissible as spontaneous declarations. Although appellant did not object at his trial to Henderson's first statement, it was not nearly as damaging to appellant as Henderson's subsequent statements, to which appellant explicitly objected. (RT 54.) The trial court abused its discretion in admitting the hearsay statements to which appellant objected.

Reversal is required in appellant's case because the error resulted in a miscarriage of justice. (See Evid. Code, § 353, subd. (b).) It is reasonably probable that the jury would have declined to convict appellant in the absence of the erroneously admitted evidence. (See People v. Watson (1956) 46 Cal.2d 818, 836.)

Furthermore, the error violated appellant's constitutional right to confront a witness against him (U.S. Const., Amends. VI, XIV; Cal. Const., art. I, § 15; Pointer v. Texas (1965) 380 U.S. 400, 403-405 [13 L.Ed.2d 923].) This is so because appellant was completely unable to cross-examine Henderson, whose hearsay statements were the most damaging evidence against him at trial. Thus he was unable to try to undermine the credibility of her statements attributing ownership of the cocaine and the gun to him. The judgment must be reversed because the error is not harmless beyond a reasonable doubt. (Chapman v. California (1967) 386 U.S. 18 [17 L.Ed.2d 705].)

The critical issue in this case was the identity of the person or persons who possessed the cocaine and the gun. "An essential element of any crime is, of course, that the defendant is the person who committed the offense." (People v. Hogue (1991) 228 Cal.App.3d 1500, 1505; accord, People v. Berryman (1993) 6 Cal.4th 1048, 1083.) The prosecution may rely on direct and/or circumstantial evidence to connect the defendant with the commission of the crime and to establish beyond a reasonable doubt that he was the perpetrator thereof. (People v. Mosher (1969) 1 Cal.3d 379, 395; People v. Huizenga (1950) 34 Cal.2d 669, 675-676.)

Appellant acknowledges that, even in the absence of the hearsay statements, the jury might have decided that appellant was the owner of the cocaine and gun, and convicted him of possession with intent to sell (Health & Saf. Code, § 11351.5), based on other properly admitted evidence, such as officer Schuelke's testimony that the luggage containing the items also contained men's clothing and a letter addressed to appellant (RT 46-47), officer Granado's testimony that appellant said Henderson's apartment where the cocaine and gun were found was one of his two addresses (RT 35), officer Granado's testimony that appellant was standing in front of a store in downtown San Bernardino for at least a half an hour one evening and that two men who were with appellant walked away when they saw Granado's patrol car (RT 31-34), and officer Granado's testimony that appellant had $1060 in cash

in his possession when he was arrested (RT 35-36, 44).

However, it is by no means a foregone conclusion that the jury would have convicted appellant in the absence of the erroneously admitted statements. Without Henderson's statements, the jury may not have been convinced beyond a reasonable doubt that the owner of the contraband was appellant rather than Henderson or some third party who may have frequented her apartment.

In his argument to the jury, the prosecutor substantially relied on Henderson's incriminating statements. (RT 132-133.) Moreover, he argued against the inference that the cocaine and the gun may have belonged to Henderson rather than appellant:

> "Here's a mother and the guy that she's letting stay with her has got a loaded gun and it's a big gun. I apologize, I don't mean to be sexist, it's not a lady's gun. Ladies' guns are a little bit littler. This is a big, macho male gun, six inch barrel." (RT 133.)

Appellant's counsel was required to devote her efforts to defending against Henderson's incriminating statements. She argued that the prosecution had established an insufficient connection between appellant and the items found in Henderson's apartment. (RT 142.) Counsel's argument suggested that it would be absurd to expect Henderson to tell the police that the cocaine and the gun were hers, because she needed to "protect herself" from criminal liability. (RT 144.) Counsel argued that Henderson's "so-called spontaneous statement is a self-serving, calculated statement

to save her rear-end." (RT 144.)

The fact that both the prosecution and the defense placed special emphasis on the extrajudicial statements in their arguments demonstrates that the erroneously admitted hearsay was critical to the prosecution's case. The error was prejudicial, and reversal is required.

//

//

(PETITIONER'S 05/17/05, "MOTION TO VACATE SUBMISSION"

EXHIBIT (B).

# PROOF OF SERVICE BY MAIL
## [C. C. P. 1013. 2015. ;28 U. S. C. 1746]

STATE OF CALIFORNIA )
) SS: PEOPLE V. STEVENS, CASE NO. EO21132.
COUNTY OF LOS ANGELES )

I (A) MARIO R. STEVENS, am a resident of California State Prison-Los Angeles County (LAC) at Lancaster, County of Los Angeles, California, and I am at least 18 years of age. My mailing address is California State Prison-Los Angeles County, Facility C., Bldg. 4., Bed 128 P. O. Box 8457, Lancaster, California 93539.

On (B) 5-17-05, 2005, I served a true and correct copy of the following document (s);

(C) (1) letter Brief, and (1) Motion to Vacate Submission, to Grant leave to file Supplemental Brief.

On each party listed below by placing it in an envelope, with adequate postage or provided, and by depositing said envelope in a box for the United States Mail at LAC, 44750 60th Street West Lancaster, California 93536.

Each party to the action has been duly served.

This copy is being mailed to (D):

HENRY ESPINOZA, COURT CLERK
CAL. COURT OF APPEAL
FORTH DIST., DIV. TWO
3389 TWELFTH ST.
RIVERSIDE, CA. 92501

I have mailed additional copies to (D):

OFFICE OF ATTORNEY GENERAL
DEPT. OF JUSTICE, P.O. BOX 944255, SACRAMENTO, CA. 94244-2550

There is regular delivery service by the United States Mail between the above place of mailing and the parties listed.

I declare, under penalty of perjury, that the foregoing is true and correct.

Dated (E): 5-17-05, 2005, at Lancaster, California 93536.

Signed: [signature], CDC#: [illegible]

LAC MAILROOM ACKNOWLEDGEMENT OF MAILING
DATED: ____________
SIGNED: ____________

MARIO R. STEVENS
J-36238/C4-128L
P.O. BOX 8457
LANCASTER, CA. 93539-8457

DEFENDANT AND APPELLANT IN PRO SE

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH DISTRICT, DIVISION TWO

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br>PLAINTIFF AND RESPONDENT,<br>v.<br>MARIO R. STEVENS,<br>DEFENDANT AND APPELLANT. | CAL.APP.CT.NO.E021132<br>CAL.SUPREME CT.NO.S074578<br>CAL.SUPERIOR CT.NO.FSB14176<br>"MOTION TO VACATE SUBMISSION,TO GRANT LEAVE TO FILE SUPPLEMENTAL OPENING BRIEF RAISING THE CRAWFORD, ISSUE AND TO RESUBMIT THE CASE."<br>(PURSUANT TO Cal.Rules Of Court, Rule 23(e); and CRAWFORD V. WASHINGTON, 124 S.Ct. 1354(2004).) |

Appellant, Mario R. Stevens, pursuant to rule 23(e), California Rules of Court, moves for an order vacating submission of the case, granting leave to file a supplemental brief, and requesting resubmission of the case for decision. Good cause for the requested order is set forth in the attached memorandum in support of this motion.

Respectfully submitted,

DATED: 5-17-05.

Mario Stevens
MARIO R. STEVENS
J-36238/C4-128L
P.O. BOX 8457
LANCASTER, CA.
93539-8457

DEFENDANT and APPELLANT
IN PRO SE.

"MEMORANDUM IN SUPPORT OF MOTION TO VACATE SUBMISSION, GRANT LEAVE TO FILE SUPPLEMENTAL BRIEF, AND RESUBMIT THE CASE."

On March 8, 2004 THE UNITED STATES SUPREME COURT, GRANTED Certiorari in, WASHINGTON STATE V. CRAWFORD,(2003) 54 P.3d 656, (Cert. Granted Sub.Nom. CRAWFORD V. WASHINGTON, 124 S.Ct. 1354 (2004). The CRAWFORD case raises the issue that out of court statements by witnesses are barred under the CONFRONTATION CLAUSE, U.S.C.A. CONST.AMEND.SIX, unless witnesses are unavailable and defendant's had prior opportunity to cross-examine witnesses, regardless of whether such statements are deemed reliable by the trial court, (Abrogating Ohio v. Roberts, 448 U.S. 56).

Since 1997 this issue has been seemingly resolved by the discretion of the trial court, by virtue of the California Supreme Court's decision in, PEOPLE V. HINES,(1997) 15 Cal.4th 997, 16 Cal.4th 825B, modified on denial of rehearing, Cert.Den. 118 S.Ct. 855, 522 U.S. 1077, 39 L.Ed.2d 755, rehearing denied 118 S.Ct. 1345, 523 U.S. 1042, 140 L.Ed.2d 504; PEOPLE V. ROYBAL,(1998) 19 Cal.4th 481, 19 Cal.4th 1231A rehearing denied, as modified, Cert.Den. 120 S.Ct. 89, 528 U.S. 832, 145 L.Ed.2d 75. The state court has consistently held that the SIXTH AMENDMENT CONFRONTATION CLAUSE, imposes no requirement of declarant unavailability as a prerequisite for admission of spontanious declarations of non-testifying witnesses, PEOPLE V. DENNIS,(1998) 17 Cal.4th 468 rehearing denied, Cert.Den. 119 S.Ct. 257, 525 U.S. 912, 142 L.Ed.2d 211. In light of the controlling adverse state court authority, and the United States Supreme Court's denial of certiorari in HINES,

Appellant's counsel in the present case did not raise the issue of, "THE CONSTITUTIONALITY OF THE CONFRONTATION CLAUSE", providing the accused the right to confront and cross-examine witnesses against him, applies not only to in-court testimony, but also to out-of-court statements introduced at trial, regardless of admissibility of statements under law of evidence, in appellant's opening brief on direct appeal. Due to the recent grant of certiorari in the CRAWFORD, case, the issue is again viable and arguable and should be raised in appellant's behalf in order to provide appellant with the effective assistance of appellate counsel.

Appellant recognizes that under the AUTO EQUITY DOCTRINE, (AUTO EQUITY, INC. V. SUPERIOR COURT,(1962) 57 Cal.2d 450, this court must follow the authority of HINES, ROYBAL, and DENNIS, and reject the claim of error. Assuming such rejection, appellant will have recourse by way of petition for review in the California Supreme Court, and if necessary, by way of petition for writ of certiorari in the United States Supreme Court.

Because this court cannot exercise it's independent judgment of the issue, appellant does not seek to argue the merits of the procedural guarantee of the Confrontation Clause, at great length in the supplemental brief.

Appellant likewise waives any right to file a reply brief, or, if such right exists, to orally argue the issue. Assuming respondant sees no need to file a respondent's brief in light of appellant's concession that this court must now reject the claim, appellant proposes that following the vacating of the submission order, and filing of the supplemental brief tendered with this motion, the

case be immediately resubmitted for decision. The procedure would have very minimal impact on the decisional process of this court. the net result would be to require the court to add a single sentence to it's opinion, noting that appellant's claim is rejected in light of HINES, ROYBAL, and DENNIS. This procedure would thus, have little effect on judicial or prosecutorial resources, but would afford appellant the opportunity to raise an arguable claim of Constitutional Error upon his direct appeal.

The court should also consider that this procedure has always been used in the past under former rule 22.5, in 1993 for all the cases which flowed from PEOPLE V. SANDOVAL,(1992) 4 Cal.4th 144 (Cert.Granted Sub. Nom. SANDOVAL V. CALIFORNIA. For these reasons of judicial economy and the protection of appellant's substantial Constitutional Rights this motion should be, Granted.

Respectfully Submitted,

DATED: 5-17-05.

Mario Stevens

MARIO R. STEVENS
J-36238/C4-128L
P.O. BOX 8457
LANCASTER, CA. 93539-8457

DEFENDANT AND APPELLANT IN PRO SE

**COURT OF APPEAL-FOURTH DISTRICT**
**DIVISION TWO**
**3389 TWELFTH STREET**
**RIVERSIDE, CA 92501**
**(909)248-0200**

Mario Rodgrick Stevens, J36238
P. O. Box 8457 (C4-128L)
Lancaster, CA 93539

Dear Appellant:

RE: **E021132**

The attached documents are being returned to you for the following reason(s):

**This document cannot be filed, as the remittitur in this case has already issued.**

Thanks,

Dated: Tuesday, June 21, 2005 By: ELIZABETH CEBALLOS
Deputy Clerk

(PETITIONER'S SWORN DECLARATION IN SUPPORT OF WRIT OF HABEAS CORPUS.)

EXHIBIT (C).

"SWORN DECLARATION OF MARIO R. STEVENS"

I am a state prisoner housed at CSP-LAC. My true name is Mario R. Stevens, I am over 21 yrs. of age. The facts I declare in this sworn declaration are within my firsthand knowledge. If called to testify, I would do so competently under oath to the following:

1. That I Mario R. Stevens was never at any time during my arrest by officer Granado, on 04/04/1997, found by police to be in possession of rock cocaine, nor was I armed with a firearm,

2. That officer Granado arrested me on 04/04/1997, for violations of the Cal.Vehicle Code, and for leaving the county of my parole, which was listed as Los Angeles, at my mother's residence,

3. That officer Grando, upon my 04/04/1997 arrest, he immediately transported me from the scene, to the police station where he promptly booked me,

4. That during booking, I stated to officer Grando that my address was: 223 E. 21st. Street, Apt-15,

5. That I am informed and believe, that after I was booked into jail by officer Granado, that he and officer Schuelke then went to the 223 E. 21st Street Apt-15 address to search for contraband,

6. That I am informed and believe, that officer's Granado and Schuelke arrested a Mr. Amos who resided at the 223 E. 21st Street, Apt-15 address, because during the search of Mr. Amos he was found to be in possession of durgs which were found in his pocket,

7. I am informed and believe, that Mr. Amos told police that Mario R. Stevens did not reside at his 223 E. 21st Street Apt-15 residence,

8. I am informed and believe, that during the police investigation of Mr. Amos, officer Schuelke made contact with officer Sharp to have a telephonic search warrant obtained from Judge Bob N. Krug,

9. I am informed and believe, that the separate police reports filed by each officer involved in my 04/04/1997 arrest clearly show that officer Sharp lied under oath to Judge Krug, in order to obtain the search warrant, by unlawfully stating that Mario R. Stevens was transported to the Amos residence, instead of directly booked in to jail as I was,

10. I am informed and believe, that the record clearly shows that officer Sharp lied under oath to Judge Krug, to obtain the search warrant when he stated that I was with Amos during the search of his residence, and that I told Sharp during that search that my true residence was at 723 Garden Dr. at the apartment of Sherryce Henderson,

11. I am informed and believe, that the tainted warrant could have been challenged due to the lack of probable cause and the fact that police lied under oath to obtain the search warrant,

12. That my public defender, C. Torres failed in her duty to perfect my rights during the crucial stage of pretrial motions and failed to challenge the tainted warrant,

Sworn and executed this 31 day of March 2006, at Lancaster, California. I Mario R. Stevens hereby declare under the penalty of perjury by the laws of the state of California, that the foregoing is true and correct, and to those facts stated on information and belief, I believe those statements to be true also.

MARIO R. STEVENS, J-36238
P.O. BOX 8457, LANCASTER, CA.

PETITIONER IN PRO SE.

**S149241**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

---

In re MARIO R. STEVENS on Habeas Corpus

---

The petition for writ of habeas corpus is denied.

SUPREME COURT
FILED

JUN 2 0 2007

Frederick K. Ohlrich Clerk

DEPUTY

GEORGE

Chief Justice

PROOF OF SERVICE BY MAIL

Supreme Court No. S074578
Crim. No. E021132
Superior Court No. FSB - 14176

I, declare that:

I am a resident of KERN VALLEY STATE PRISON in the county of Kern County, California. I am over the age of 18 years. My address is: 3000 W, Cecil ave. Delano, CA 93216.

On 12-13-07, I served the attached Writ Of Habeas Corpus on the ________ in said case by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully paid, in the United States mail at Kern State Valley Prison addressed as follows:

K.V.S.P | P.O. Box 5103 Delano, Ca. 93216

I declared under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on 12-13-07 at Delano, California.

Mario R. Stevens

Mario Stevens

**VERIFICATION**

I, MARIO R. STEVENS:

I am the petitioner in this action. I have read the foregoing petition for writ of habeas corpus and the facts stated therein are true of my own knowledge, except as to matters that are therein stated on my own information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Kern Valley State Prison on 12-13-07.

Mario Stevens
Petitioner

CDC# J36238

Mario R. Stevens
K.V.S.P.
P.O. Box 5103
Delano, CA 93216

**In Pro Per**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>Mario R. Stevens<br><br>On Habeas Corpus | **REQUEST FOR APPOINTMENT OF COUNSEL AND DECLARATION OF INDIGENCY** |

I, Mario R. Stevens, declare that I am a petitioner to the above-referenced matter, that I am incarcerated at KERN VALLEY STATE PRISON, and that I am indigent and unable to afford counsel. My total assets are $ 0 and my income is $ 0.00 per month.

I hereby request that counsel be appointed in this matter so that my interests may be protected by the professional assistance required. In addition, when a court issues an order to show cause, counsel must be appointed for an indigent petitoner who requests counsel. California Rules of Court, rule 4.551(c)(2).

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on 12-13-07.

Mario Stevens

(PETITIONER'S POSTCARD DENIAL FROM THE CALIFORNIA COURT OF APPEAL).

EXHIBIT (D)

COURT OF APPEAL -- STATE OF CALIFORNIA
FOURTH DISTRICT
DIVISION TWO

FILED
SEP 13 2006
COURT OF APPEAL FOURTH DISTRICT

**ORDER**

| | |
|---|---|
| In re<br>MARIO R. STEVENS<br>on Habeas Corpus. | E041228<br>(Super.Ct.No. SWH8816)<br>The County of San Bernardino |

THE COURT

The petition for writ of habeas corpus is DENIED.

HOLLENHORST
Acting P.J.

cc: See attached list

COPY

THE CALIFORNIA COURT OF APPEAL

FOURTH APPELLATE DISTRICT, DIV. TWO.

| | |
|---|---|
| IN RE:<br>MARIO R. STEVENS,<br>PETITIONER,<br>ON HABEAS CORPUS. | CASE NO. SWHSS8816<br>"PETITIONER'S RESPONSE TO THE SUPERIOR COURTS ORDER AND DENIAL OF HIS PETITION FOR WRIT OF HABEAS CORPUS, TO BE CONSOLIDATED AND CONSIDERED FOR APPELLATE REVIEW." |

TO THE HONORABLE CALIFORNIA COURT OF APPEALS, FOURTH APPELLATE DIST. DIV. TWO. UPON THE DENIAL OF PETITIONER'S WRIT OF HABEAS CORPUS BY THE TRIAL COURT, PETITIONER HEREIN ADDRESSES THE REASON GIVEN BY THE COURT FOR IT'S DENIAL AS FOLLOWS:

The trial court erroneously found that hearsay testimony can be introduced at trial against petitioner. The trial court further found, contrary to State law, that the petitioner is [not] permitted to raise an issue on habeas corpus, if it had already been brought on his direct appeal, even if there has been a significant change in the law. (See: IN RE HARRIS,(1993) 21 Cal.Rptr.2d 373; IN RE SALDANA,(1997) 67 Cal.Rptr.2d 183).

Clearly State law holds that a violation of a fundamental right can be challenged on habeas corpus, even when the claim was rejected on appeal, as long as the petitioner can demonstrate that the defect so infected the trial and conviction, "as to violate the fundamental aspects of fairness and result in a "miscarage of justice." (HARRIS, SUPRA.)

When the United States Supreme Court announced the new rule for conduct of criminal prosecutions in, CRAWFORD V. WASHINGTON, 124 S.Ct. 1354 (2004),

The petitioner's ground previously rejected on appeal, based on the holdings of CRAWFORD, is now a viable and arguable, and should be considered because his conviction was based soly on hearsay testimony which was allowed under the prior holdings of Ohio v. Roberts, 448 U.S. 56,66 (1980), which has now been abrogated by the Crawford Court's ruling.

State law allows this Honorable court to revisit this issue on habeas corpus, under the new law announced in, CRAWFORD V. WASHINGTON, 124 S. Ct. 1354 (2004).

The trial court is wrong in it's finding that CRAWFORD is not applicable to the circumstances of petitioner's trial.

Respectfully submitted,

DATED: 8-23-06.

Mario Stevens

MARIO R. STEVENS

PETITIONER.

# PROOF OF SERVICE BY UNITED STATES MAIL
(Code of Civil Procedure Section 1015)
(28 U.S.C. Section 1746)

I, Mario R. Stevens, declare, ~~depose and say~~, the ~~following statement~~ is true and correct under penalty of perjury according to the laws of the State of California based on matters known to me personally to be true:

1) I am over the age of eighteen years a resident and state prisoner, of the State of California with a present mailing address of:
CSP--LAC, Facility C, P.O. Box 8754, Lancaster, CA 93539-____

2) On this 23 day of August 2006, I caused a true and correct copy of the following, specifically described, document(s); to wit:

Petition for writ of habeas Corpus, with supporting exhibits

At the prison to be placed in a sealed envelope(s), with first class postage, having been placed thereon, duly addressed to the interested person or persons described hereinafter, and then deposited such envelope(s) in the regular United States mail, or mail service made available a where I am being detained, to the addressee(s):

Calif. Court of Appeals
Fourth Dist. Division Two
3389 12th St.
Riverside, CA. 92501

Calif. Attorney General
110 W. A St.
San Diego, CA. 92101

3) I declare that there has been regular U.S. mail pick-up by correctional officers at the prison, and/or delivery service, at the places(s) where I posted the envelopes described above, regular communication by mail between the place of mailing and the place so addressed.

Executed this 23 day of August, 2006, under penalty of perjury according to the laws of the State of California, at Los Angeles, County, City of Lancaster.

Mario Stevens
Declarant

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO

San Bernardino Superior Court
351 N Arrowhead Ave
San Bernardino, CA 92415

---

CASE NO: SWHSS8816

MARIO R. STEVENS
P.O. BOX 8457/ID#J-36238
CSP-LAC/C4-128L
LANCASTER CA 93539-8457

---

I M P O R T A N T   C O R R E S P O N D E N C E

From the above entitled court, enclosed you will find:

a copy of today's minute order}

---

CERTIFICATE OF SERVICE BY MAIL

I hereby declare that I am over the age of 18 years, a resident of San Bernardino County, State of California, and not a party to nor interested in the above-entitled case. I am a Deputy Court Executive Officer of the said County and on the date shown below I served the above named document by enclosing it in an envelope addressed to the interested party, for collection and mailing this date, following ordinary business practice.

Executed on 06/26/06 at San Bernardino, CA. By: OLIVIA MCDONALD

Olivia McDonald

---

M A I L I N G   C O V E R   S H E E T

SUPERIOR COURT
COUNTY OF SAN BERNARDINO
Department No. S-8
351 North Arrowhead Avenue
San Bernardino, California 92415-0240

FILED
SUPERIOR COURT
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

JUN 23 2006

BY Olivia McDonald
DEPUTY

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN BERNARDINO

SAN BERNARDINO DISTRICT

| | |
|---|---|
| In re the Petition of<br><br>MARIO R. STEVENS,<br><br>For Writ of Habeas Corpus. | Case No. SWHSS 8816<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

The petition of MARIO R. STEVENS for Writ of Habeas Corpus was filed in this court on June 6, 2006.

Therein, Petitioner contends that the trial court erroneously allowed hearsay testimony to be introduced against him at his trial.

Obviously, this is an issue for appeal, not habeas corpus. In fact, this very issue was raised on direct appeal (case no. EO21132, opinion filed September 30, 1998) and rejected by the Appellate Court as without merit.

However, Petitioner contends that the case of Crawford v. Washington, cited by Petitioner as 124 S. Ct. 1354 (2004) allows him to revisit this issue in a petition for habeas corpus.

Not so. The Crawford case is not applicable to the circumstances of Petitioner's trial.

The petition is denied.

Dated this 23rd day of June, 2006.

JOHN P. WADE

JOHN P. WADE
Judge of the Superior Court

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

FILED
DEC 2 0 2007
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY [signature] DEPUTY

2384 1983
FILING FEE PAID
Yes ___ No ✓
IFP MOTION FILED
Yes ✓ No ___
COPIES SENT TO
Court ✓ ProSe ✓

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

Mario R. Stevens

**DEFENDANTS**

A. Hedgepeth, et al

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Kern
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT**
**(IN U.S. PLAINTIFF CASES ONLY)**

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Mario R. Stevens
PO Box 5103
Delano, CA 93216
J-36238

**ATTORNEYS (IF KNOWN)**

'07 CV 2398 W NLS

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX (For Diversity Cases Only) FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

**28 U.S.C. 2254**

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

**CONTRACT**
- ☐ 110 Insurance
- ☐ Marine
- ☐ Miller Act
- ☐ Negotiable Instrument
- ☐ 150 Recovery of Overpayment &Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153Recovery of Overpayment of Veterans Benefits
- ☐ 160 Stockholders Suits
- ☐ Other Contract
- ☐ 195 Contract Product Liability

**TORTS — PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury-Medical Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710Fair Labor Standards Act
- 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc.
- ☐ Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (13958)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS - Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reappointment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities Exchange
- ☐ 875 Customer Challenge 12 USC
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State
- ☐ 890 Other Statutory Actions

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectmant
- ☐ 240 Tort to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus
- ☒ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding ☐ 2 Removal from State Court ☐ 3 Remanded from Appelate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 **DEMAND $**

Check YES only if demanded in complaint:
**JURY DEMAND:** ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):** JUDGE Docket Number

DATE 12/20/2007

~~SIGNATURE OF ATTORNEY OF RECORD~~ [signature]